# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BAC Home Loans Servicing, LP,
      Plaintiff,

vs.

              Court File No. _____

Anchor Bank, N.A.,
f/k/a Anchor Bank Saint Paul, N.A.,
f/k/a Anchor Bank, West St. Paul, N.A.,

      Defendant.

---

## COMPLAINT

---

Plaintiff BAC Home Loans Servicing, LP ("**Plaintiff**"), for its claim for relief, states and alleges as follows:

### PARTIES

1.  BAC Home Loans Servicing, LP is a Texas limited partnership.

2.  Defendant Anchor Bank, N.A., f/k/a Anchor Bank Saint Paul, N.A., f/k/a Anchor Bank, West Saint Paul, N.A. ("**Anchor Bank**") is a corporation organized and existing under the laws of the United States with its location and principal place of business in Minnesota.

### STATEMENT OF JURISDICTION

3.  Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

4.  BAC Home Loans Servicing, LP is a Texas limited partnership, which consists of only two partners, BANA LP, LLC and BAC GP, LLC.  For diversity purposes, the citizenship of a limited liability company is determined by the citizenship of its members.  *E.g., OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007); *GMAC Commercial Credit LLC*

*GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). The sole member of both BANA LP, LLC and BAC GP, LLC is Bank of America, National Association.

5.      A national banking association incorporated under the laws of the United States is considered a citizen of the states in which it is "located." 28 U.S.C. § 1348. "[T]he definition of 'located' is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association." *Horton v. Bank One, N.A.*, 387 F.3d 426, 436 (5th Cir. 2004). Bank of America, National Association is a citizen of North Carolina, based on the state listed in its articles of association and its principal place of business being located in Charlotte, North Carolina.

6.      Anchor Bank is a citizen of Minnesota, based on the state listed in its articles of association and its principal place of business being located in Minnesota.

7.      Therefore, complete diversity exists between the Plaintiff and Defendant. *See* 28 U.S.C. § 1332(a)(1).

## CONSTRUCTION PROJECT

8.      In late June, 2007, Gary and Martha Gustafson ("**Gustafsons**") contacted Pro Craft Homes, Inc. ("**ProCraft**") to obtain a bid for a substantial construction project for their existing home situated upon  real property in Anoka County commonly known as 5955 Linwood Drive, NE, Wyoming MN ("**Property**").

9.      Based on the Gustafsons' specifications, ProCraft submitted a proposal dated June 21, 2007 ("**Proposal**") that outlined an ambitious construction project quoted at $531,145.00. The project included a tear-off and removal of an existing deck and other structures, and the design and construction of a large structural addition containing a four-season porch, kitchen,

dining room, laundry room, master bedroom suite, family room, and several bedrooms and bathrooms ("**Construction Project**").   An accurate copy of the Proposal is attached as Exhibit 1.

10.   Upon information and belief, the Gustafsons approved the Proposal and applied to Anchor Bank for a construction loan to finance the Construction Project.

11.   Upon information and belief, the Gustafsons submitted an application for a construction loan, a copy of the Proposal, and other necessary documentation to Anchor Bank.

12.   Upon information and belief, Anchor Bank denied the Gustafsons' construction loan application.

## ANCHOR BANK MADE A CONVENTIONAL CONFORMING LOAN TO THE GUSTAFSONS, BUT NEITHER PARTY DISCLOSED THE CONSTRUCTION PROJECT TO THE TITLE COMPANY AT CLOSING

13.   Despite its actual knowledge of the Gustafsons' planned Construction Project, Anchor Bank nevertheless approved the Gustafsons for a Conventional Conforming Loan that would provide cash for the Gustafsons to finance the Construction Project.

14.   A closing was scheduled for the Gustafsons to obtain their Conventional Conforming Loan from Anchor Bank on July 30, 2007.

15.   The Construction Project was scheduled to begin immediately the next day after closing.

16.   At closing, the Gustafsons executed a Uniform Residential Loan Application ("**Application**") for Anchor Bank.  An accurate copy of the Application is attached as Exhibit 2.

17.   The "Purpose of Loan" section of the Application showed "Refinance" rather than "Construction" as the purpose of the loan.   In the "Purpose of Refinance" section, the Application merely stated "Cash Out/ Home Improvement," with no further explanation.  None

3

of the Application sections for construction information, such as "Cost of Improvements," were completed, and instead, were left blank.

18.     Section VII of the Loan Application, entitled "Details of Transaction," provided a blank for the parties to fill in the amount of loan proceeds dedicated to "Alterations, Improvements, Repairs" on the Property.  Neither Anchor Bank nor the Gustafsons disclosed that any portion of the loan proceeds were to be used for the half-million-dollar Construction Project, even though the loan amount was for $417,000.00.

19.     The Gustafsons executed a promissory note in favor of Anchor Bank in the amount of $417,000 ("**Note**").  To secure the Note with a first priority lien, the Gustafsons executed and delivered a mortgage in favor of Anchor Bank that was later filed for record with the Anoka County Recorder on August 7, 2007 as Document No. 1994996.011 ("**Mortgage**").  Accurate copies of the Note and Mortgage are attached as Exhibits 3 and 4.

20.     Neither the Gustafsons nor Anchor Bank disclosed to the title company at the closing any relevant information about the Construction Project, its magnitude or that it was scheduled to begin immediately the next day.

21.     Due to the failures by the Gustafsons and Anchor Bank to disclose the Construction Project, or its timing, the title company did not take any standard or customary precautions to assure the Mortgage would be recorded in first lien position, superior to the interests of any potential mechanics' liens.

## MECHANICS' LIENS WITH SUPERIOR PRIORITY

22.     On July 31, 2007, the Gustafsons executed a construction contract with ProCraft ("**Contract**") to begin construction immediately the day after closing.  An accurate copy of the Contract is attached as Exhibit 5.

23.     On July 31, 2007, ProCraft and its subcontractors began tearing off the deck, removing stumps and footings, and preparing the Property for construction.  The Affidavits of Troy Pugsley, Josh Melcher, James Melcher, and Keith Eibensteiner are attached as Exhibits 6-9.

24.     The Mortgage was later recorded on August 7, 2007, seven days after ProCraft began work on the Construction Project.

25.     The Anoka County District Court judicially determined that the work performed by ProCraft and its subcontractors began on July 31, 2007 and gave rise to valid and enforceable mechanics' liens against the Property.  The liens were adjudicated to be senior to the Mortgage. An accurate copy of the court's Findings of Fact, Conclusions of Law and Order for Judgment Order ("**Order**") is attached as Exhibit 10.

26.     Anchor Bank was named and served as a party defendant in the Anoka County lawsuit, but did not appear, answer or otherwise defend against the action.

27.     Anchor Bank further failed to forward any notice of the Anoka County lawsuit to Plaintiff.

## ANCHOR BANK SOLD THE MORTGAGE LOAN TO PLAINTIFF

28.     Immediately after closing, Anchor Bank sold its mortgage loan in the secondary market to Plaintiff, pursuant to an Assignment of Mortgage, dated July 30, 2007, and recorded with the Anoka County Recorder on September 10, 2007 as document no. 1995726.003 ("**Assignment**").  An accurate copy of the Assignment is attached as Exhibit 11.

29.     The sale to Plaintiff was accomplished pursuant to a Loan Purchase Agreement, dated July 24, 2003 between Countrywide Home Loans, Inc. and Anchor Bank, West St. Paul, N.A. ("**Agreement**").  An accurate copy of the Agreement is attached as Exhibit 12.

30.     Plaintiff, as servicer for Bank of America Correspondent Lending, which is

administering all recourse obligations due to Countrywide Home Loans, Inc., is contractually obligated to pursue all rights and remedies of Countrywide Home Loans, Inc. under the Agreement.

31.    The Agreement provided that only certain mortgage loans were eligible for purchase, and that those mortgage loans had to be fully underwritten and in complete compliance with the terms and conditions of the Agreement. (*See* Agreement ¶ 1(A-C)).

32.    In the Agreement, Anchor Bank represented and warranted to Plaintiff that the Mortgage was "valid and complie[d] with all criteria contained in" Countrywide's Correspondent Lending Division Loan Purchase Program Seller's Manual.

33.    Pursuant to the terms of the Agreement, Anchor Bank represented that the loan was a Conforming Conventional first mortgage. (Agreement, ¶ 6A(1)).

34.    Anchor Bank also represented and warranted that the Mortgage was

> [A] valid first lien ... on the mortgaged property, and the mortgaged property is free and clear of all encumbrances and liens having priority over the lien of such loan [...]. (Agreement ¶ 6A(4))

And the Mortgage was

> Not the subject of, and Seller is not aware of any facts which could give rise to, litigation which could affect Countrywide's ability to enforce the terms of the obligations or its right under the mortgage documents. (Agreement ¶6A(8))

And the Property was

> [F]ree and clear of all mechanic's and materialmen's liens or liens in the nature thereof, and no rights are outstanding that under law could give rise to any such lien, nor is Seller aware of any facts which could give rise to such lien. (Agreement ¶ 6A(5))

And Anchor Bank represented and warranted that Anchor Bank

> Has no knowledge of any circumstances or conditions with respect to any Loan, mortgaged property, ... that reasonably could cause private institutional investors

to regard any Loan as an unacceptable investment, cause any Loan to become delinquent or adversely affect the value or marketability of the Loan. (Agreement ¶ 6A(16)).

35.     When any of the above provisions are breached, the Agreement imposes the following repurchase obligation on Anchor Bank:

Seller *shall* repurchase any Loan sold to Countrywide pursuant to this Agreement within twenty business days of receipt of written notice from Countrywide of any of the following circumstances:

…

(2)  Countrywide determines that there is any evidence of fraud in the origination of the Loan or in the sale of the Loan to Countrywide or that any matter in the mortgage loan file is not true and correct…;

(3) If Countrywide determines the Loan is not eligible for… pool participation or whole loan purchase or purchase by a private investor...;

…

(5)  Seller fails to observe or perform or breaches in any material respect any of the representations, warranties, or agreements contained in this Agreement or the Manual with respect to a particular loan.

(Agreement ¶ 7A, 7A(2,3,5)).

36.     Additionally, the Agreement empowers Plaintiff to obtain monetary indemnification from Anchor Bank, including

[T]he requirement that the Seller shall pay to Countrywide, at the time that the Indemnification Agreement is executed, the amount specified by Countrywide as the amount necessary to cover its projected and potential costs and losses, and including the service release premium paid by Countrywide to the Seller with respect to the Loan.

(Agreement, p. 4, Section 7(B)).

37.     On or about November 1, 2010, Plaintiff demanded that Anchor Bank repurchase the loan by December 15, 2010.  An accurate copy of the November 1, 2010 Repurchase Demand Statement is attached as Exhibit 13.

38.     Despite demand, Anchor Bank refuses to repurchase the loan or honor its obligations under the Agreement based upon its breaches of warranty and representations made

7

in the Agreement.

## COUNT I - SPECIFIC PERFORMANCE

39.     Plaintiff realleges all preceding paragraphs.

40.     The Agreement is a valid, enforceable contract signed by two sophisticated parties negotiating at arm's length.

41.     Anchor Bank breached section 6A(1) of the Agreement based upon its representations and warranties that the purchased "*Loan is valid and complies with all criteria contained in*" Countrywide's Correspondent Lending Division Loan Purchase Program Seller's Manual.

42.     The Mortgage was not a Conforming Conventional first Mortgage as represented, but rather was an undisclosed construction mortgage that was junior to prior mechanics' liens.

43.     Anchor Bank's nondisclosure of the construction nature of the loan was a cause of the loss of priority that resulted in the Mortgage becoming junior and inferior to the mechanics liens.

44.     Without knowledge that construction was scheduled to begin the day after closing, the title company handling the closing did not take steps to protect against the loss of priority by setting up processes for draw requests, lien waivers or providing for immediate the recording of the mortgage in conjunction with taking priority pictures.

45.     Anchor Bank breached section 6A(4) of the Agreement, by representing and warranting that the Mortgage was a "*valid first lien.*"

46.     The Mortgage was adjudicated to be junior and inferior to the mechanics liens.

47.     The loss of priority was caused in part by Anchor Bank's nondisclosure of the Construction Project or construction purpose of the Loan.

48.     Anchor Bank breached section 6A(5) of the Agreement by representing and warranting that "*the mortgaged Property is free and clear of mechanics' liens and materialmen's liens or liens in the nature thereof, and no rights are outstanding that under could give rise to any such lien, nor is Seller aware of any facts which could give rise to any such lien.*"

49.     Anchor Bank breached section 6A(8) of the Agreement by representing and warranting that the Loan is not "*the subject of, and Seller is not aware of any facts which could give rise to, litigation which could affect Countrywide's ability to enforce the terms of the obligations or its right under the mortgage documents.*"

50.     Anchor Bank breached section 6A(16) of the Agreement by representing and warranting that "*Seller has no knowledge of any circumstances or conditions with respect to any Loan, mortgaged property, ... that reasonably could be expected to cause private institutional investors to regard any Loan as an unacceptable investment, cause any Loan to become delinquent or adversely affect the value or marketability of the Loan.*"

51.     The Agreement provides for Plaintiff to demand that Anchor Bank repurchase the Mortgage as a result of the breach of warranties and representations by Anchor Bank.

52.     As a direct and proximate result of Anchor Bank's actions, failures to act, and its breach of warranties and representations under the Agreement, Plaintiff suffered a loss, harm and damages, and is entitled to an order requiring specific performance of Anchor Bank's repurchase obligations under the Agreement.

53.     Under the Agreement, Plaintiff is additionally entitled to recover its litigation costs and attorney's fees incurred in this action.

## COUNT II
### BREACH OF CONTRACT

54.     Plaintiff realleges all preceding paragraphs.

55.     The Agreement entitles Plaintiff to alternatively seek relief in the form of payment from Anchor Bank of an amount necessary to cover Plaintiff's projected costs and losses associated with Anchor Bank's breach of the Agreement.

56.     As a direct and proximate result of Anchor Bank's breach of the Agreement, Plaintiff has suffered damages in an amount to be determined at trial, and is entitled to a judgment against Anchor Bank in an amount necessary to cover Plaintiff's projected costs and losses regarding the Mortgage.

57.     Under the Agreement, Plaintiff is additionally entitled to recover its litigation costs and attorney's fees incurred in this action.

## COUNT III
### UNJUST ENRICHMENT

58.     Plaintiff realleges all preceding paragraphs.

59.     Anchor Bank originated the Mortgage as a Conventional Conforming Loan despite having actual knowledge of the Construction Project and that the Loan was for construction purposes.

60.     Anchor Bank falsely represented and warranted to Plaintiff that the Mortgage was a Conventional Conforming Loan and a first priority position, despite having actual knowledge of facts to the contrary, and failing to disclose such contrary information to Plaintiff.

61.     Plaintiff relied to its detriment upon Anchor Bank's false warranties and representations by purchasing the Mortgage.

62.     Title insurance coverage was jeopardized by Anchor Bank's false warranties and

10

representations that are a direct cause of the loss of priority of the Mortgage.

63.     Anchor Bank will be unjustly enriched if allowed to retain those benefits of its sale of the Note and Mortgage to Plaintiff, based on its conduct that rises to the level of unjust, immoral and/or illegal conduct.

64.     Plaintiff is alternatively entitled to judgment against Anchor Bank for an amount to be determined at trial based on the amount of money or value that Anchor Bank received unjustly and to the detriment of Plaintiff.

**WHEREFORE,** Plaintiff BAC Home Loans Servicing, LP respectfully requests the following relief:

1.      Adjudging and determining that Anchor Bank breached the Agreement by its actions, failures to act and breach of warranties and representations given under the Agreement;

2.      Under Count I, adjudging and determining that Anchor Bank shall be obligated to repurchase the Mortgage from Plaintiff for the price calculated by application of the formula contained within the Agreement;

3.      Under Count II, alternatively, entering judgment in favor of Plaintiff and against Anchor Bank for an amount necessary to compensate Plaintiff for its damages incurred as a direct and proximate result of Anchor Bank's breach of the Agreement;

4.      Under Count III, alternatively, adjudging that Anchor Bank has been unjustly enriched to the detriment of Plaintiff and that Plaintiff is therefore entitled to judgment against Anchor Bank for an amount to be determined at trial based on the amount of money or value that Anchor Bank received unjustly and to the detriment of Plaintiff;

5.      Under Counts I, II and III, adjudging and determining that Plaintiff is entitled to judgment against Anchor Bank for the reasonable costs and attorney's fees incurred by Plaintiff

to enforce its rights under the Agreement; and

6.      Granting such other and further relief as the Court deems just and equitable.

**WILFORD & GESKE, P.A.**

Dated: January 12, 2011

By: _____
        Eric D. Cook, # 218807
        Robert Q. Williams, #0388794
        Attorneys for Plaintiff
        8425 Seasons Parkway, Suite 105
        Woodbury, MN  55125
        ecook@wilfordgeske.com
        rwilliams@wilfordgeske.com
        (651) 209-3300